UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Mag. No. 13-3588 (MF)

**IN THE MATTER OF THE
EXTRADITION OF DIEUSEUL
JEAN**

**OPINION**

**FALK, U.S.M.J.**

Before the Court is the Government's application for the extradition of Dieuseul Jean ("Jean") to Canada pursuant to 18 U.S.C. § 3184[1] and the Extradition Treaty between the United States of America and Canada of December 3, 1971.

On January 17, 1996, the Director of Criminal and Penal Prosecutions of Quebec charged Jean with one count of murder, following which an arrest warrant was issued. Jean apparently fled Canada and relocated to the United States. For 17 years, Canadian and American authorities

---

[1] 18 U.S.C. § 3184 provides that:

> If, on such hearing, [the magistrate judge] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

attempted to locate Jean.  In early 2013, Jean was determined to be living in Irvington, New Jersey under an alias "Jean Gardy Mentor."  On March 22, 2013, Jean was arrested pursuant to a provisional complaint and arrest warrant, and remains in the custody of the United States Marshal.  The United States now makes this application for his extradition to Canada.

The Court has considered the papers in support of and in opposition to the request, and conducted a hearing on August 21, 2013.  For the reasons set forth below, and those stated on the record during the extradition proceeding, the Government's application is **GRANTED**.

## **ALLEGATIONS**[2]

Jean is charged with murdering Juthlande Pierre ("Pierre"), his ex-girlfriend, on or about December 25, 1995.  Earlier in December 1995, Jean was prohibited by a Canadian Court from having contact with Pierre.  Nonetheless, Jean was seen with Pierre from December 23, 1995 to December 25, 1995, when she was last seen alive.  On December 24, 1995, Jean contacted a friend, Ainnan Ahmed Farhan ("Farhan"), about attending a party.  Farhan picked up Jean and Pierre, drove them to the party, and eventually drove them home around 4:30 a.m.

The same morning, Marie Luce Alteme ("Alteme"), a friend of the victim, called Pierre's home.  Jean answered the telephone and told Alteme that he had not seen Pierre.  At approximately 1:00 p.m., the same day, Jean borrowed a hammer from Pierre's neighbor.  He returned the hammer four hours later and was observed leaving Pierre's home in a blue General Motor's vehicle.

The next day, Jean went to the home of his cousin, Cadet Alourdes ("Alourdes"), and

---

[2] These allegations are drawn from the Complaint and materials submitted by the Canadian Government in support of extradition. Particular emphasis is placed on the summary of allegations prepared by Detective Sergeant Antonio Paradiso of the Montreal Police, which is

2

asked her to take care of his car because he feared that he would be arrested. He never returned to pick up the car. The same day, Jean attempted to pick up Pierre's daughter from Alteme's home where she was staying, but Alteme refused to give him the child. On December 29, 2005, Alourdes received a collect call from Jean from Newark, New Jersey, but she declined the charges and the call was disconnected.

On January 15, 1996, Pierre's landlord entered her home and noticed that the living room carpet had been nailed to the floor and that there were red stains beneath it. Canadian police were called to the premises to investigate. Shortly thereafter, Pierre's body was discovered in the basement, her body wrapped in a carpet beneath a pile of debris. An autopsy report later concluded that the probable cause of death was asphyxia by neck compression and that the victim had several knife wounds, including 7 penetrating marks and 13 cuts. The Homicide Unit investigating the scene, which included a forensic identification expert and a biologist, found a small purse on a table containing Jean's personal papers. They also found a wrist bracelet stained with blood that appeared similar to a bracelet worn by Jean in a photograph.

On January 17, 1996, Jean was charged with one count of murder and an arrest warrant was issued. On January 19, 1996, Canadian authorities obtained from a bus company in Montreal a receipt for a one way bus ticket, dated December 28, 1995, to Newark, New Jersey, in the name of Dieuseul Jean. For seventeen years, Canadian and American authorities searched for Jean without success.

In March 2013, Jean was identified as living in Irvington, New Jersey. Jean, using the alias Jean Gardy Mentor, submitted an application for U.S. Citizenship. Fingerprints taken in

---

attached as Exhibit D to the declaration of Canadian prosecutor Dany Jean.

connection with that application resulted in a match in the system for Jean, wanted for murder in Montreal, Canada. On March 22, 2013, Jean was arrested pursuant to the provisional Complaint and Arrest warrant issued by this Court.

## ANALYSIS

**1.** **Extradition**

Extradition proceedings are *sui generis*. See, e.g., In re Extradition of Kirby, 106 F.3d 855, 867 (9th Cir. 1996). Different from a criminal proceeding, an extradition hearing is considered "administrative in character" and is governed by statute and treaty. Id.; see 18 U.S.C. §§ 3181-84. The limited purpose of an extradition proceeding is generally to determine "whether there is probable cause to believe that the defendant is guilty of the crimes charged. If the evidence is sufficient, the court makes a finding of extraditability and certifies the case to the Secretary of State." Sidali v. I.N.S., 107 F.3d 191, 195 (3d Cir. 1997).

To issue a certificate of extradition, the Court's inquiry is focused on the following:

> (1) whether there is an applicable extradition treaty between the requesting country and the requested country that is in full force and effect;
> (2) whether there are charges pending against the proposed extraditee in the requesting country;
> (3) whether the treaty authorizes the extradition for the crime alleged to have been committed; and
> (4) whether there is competent legal evidence to support a finding of probable cause as to the charge for which the extradition is sought.

See In re Extradition of Aquino, 697 F. Supp. 2d 586, 595 (D.N.J. 2010); In re Extradition of Magdalena Bolanos, 594 F. Supp. 2d 515, 518 (D.N.J. 2009) (citing Bingham v. Bradley, 241 U.S. 511, 516-17 (1916)).

Jean challenges only the fourth element necessary for extradition—namely, whether the evidence produced by the Government supports a finding of probable cause. (Def.'s Br. 2-3.) Nonetheless, for purposes of completeness, all four factors are addressed.

**(a)     Applicable Treaty**.

The treaty at issue is the December 3, 1971 treaty between the United States of America and Canada, as amended.[3] The Government has provided a declaration from Alexis Blane, Esq., an attorney in the Office of the Legal Advisor of the Department of State, certifying that the treaty is in full force and effect.[4] Moreover, Jean does not challenge that the treaty is enforceable and applicable; therefore, this factor is satisfied.

**(b)     Charges Pending**

The documents submitted by the Government demonstrate that Jean has been charged with murder. See Warrant for Arrest.[5] It is undisputed that the charges against Jean are, in fact, pending.

**(c)     Terms of the Treaty**

The next step is to determine whether the offense at issue falls within the scope of the

---

[3] See Extradition Treaty, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, as amended by Protocol Amending the Extradition Treaty with Canada, U.S. Can., Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990), and Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. Treaty Doc. No. 107-11 (2002).

[4] Relevant portions of the treaty have been attached as exhibits to Ms. Blane's Declaration.

[5] See The Government has submitted copies of the original arrest warrant as well as an English translation. *See* Warrant of Arrest issued by Justice of the Peace Louise Baribeau on January 17, 1996, in the District of Montreal under Court File Number 500–01-020891-96.

treaty and whether its illegal in both countries. See, e.g., Quinn v. Robinson, 783 F.2d 776, 783 (9th Cir. 1986) ("Under the doctrine of 'dual criminality' an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the law of both the requesting and requested nations"). Here, the documents submitted by the requesting state establish that Jean has been charged in Canada with the crime of murder, in violation of Section 229 and Section 231 of the Criminal Code of Canada. Under Article 2 of the Treaty applicable here, the offense charged is clearly extraditable. See Treaty Art. 2, 27 U.S.T. 986.

**(d)    Probable Cause**

The Court must now determine whether the evidence presented is sufficient to sustain the charge. See, e.g., Sidali, 107 F.3d at 195. "In essence, the court must analyze if there is probable cause to believe that the individual committed acts alleged in the extradition request." Spatola v. United States, 925 F.2d 615, 618 (3d Cir. 1991). Because of the unique nature of an extradition proceeding, the Court's determination does not require an adjudication of guilt or innocence,[6] a determination of whether the evidence is sufficient to justify a conviction,[7] or a prediction of whether the Canadian courts will convict Jean. See generally Benson v. McMahon, 127 U.S. 457, 463 (1888).[8] Moreover, the Federal Rules of Criminal Procedure and Federal

---

[6] See, e.g., Collins v. Loisel, 259 U.S. 309, 316 (1922) ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.").

[7] See, e.g., Peters v. Egnor, 888 F.2d 713, 717 (10th Cir. 1989) (citing to Collins v. Loisel, 259 U.S. 309, 316 (1922)); United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999).

[8] ("We are not sitting in this court on the trial of the prisoner, with power to pronounce him guilty and punish him or declare him innocent and acquit him. We are now engaged simply

Rules of Evidence do not apply to extradition hearings. See Fed. R. Crim. P. 54(b)(5); Fed. R. Evid. 1101(d)(3).[9] Rather, as the Government points out, "unique rules of 'wide latitude,' govern reception of evidence in Section 3184 hearings," Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969), with hearsay evidence permitted. See In re A.M., 34 F.3d 153, 161 (3d Cir. 1994).

The probable cause standard applicable in extradition proceedings is the same as the standard used in federal preliminary hearings. See Hoxha v. Levi, 465 F.3d 554, 561 (3d Cir. 2006). To satisfy this standard, the government requesting extradition has the burden of producing evidence sufficient to give the Magistrate Judge "reasonable ground to believe the accused was guilty." Quinn, 783 F.2d at 790; see also Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir.1990). This is a relatively modest standard that requires the Court consider "the totality of the circumstances" involved. Illinois v. Gates, 462 U.S. 213, 238 (1983).

**Analysis**

Having carefully considered the materials submitted, the Court concludes that the Government's proofs meet the limited threshold of probable cause and are sufficient to support

---

in an inquiry as to whether, under the construction of the act of congress and the treaty entered into between this country and Mexico, there was legal evidence before the commissioner to justify him in exercising his power to commit the person accused to custody to await the requisition of the Mexican government.")

[9] See generally U.S. ex rel. Eatessami v. Marasco, 275 F.Supp. 492, 494 (S.D.N.Y. 1967) ("The federal courts have always recognized that an extradition magistrate [judge] need not be bound by the specific rules of evidence or rules governing the admissibility of evidence in such proceedings as these. Similarly, an extradition magistrate [judge] need not be concerned about acting only upon evidence which would be sufficient to convict under the laws of the place where he sits. Hearsay evidence, for example, may be considered by a judge or United States Commissioner sitting as an extradition magistrate.").

extradition.

The Government's application is supported by the charging documents submitted by Canadian authorities, which include a certification provided by Dany Jean, the Prosecuting Attorney for the Director of Criminal and Penal Prosecutions of Quebec. Attached to Prosecutor Jean's certification is a lengthy summary of the facts and evidence against Jean prepared by Detective Sergeant Antonio Paradiso of the Montreal Police. <u>See</u> Jean Declaration, Exhibit D ("Summary of the Facts"). This statement provides a thorough overview of the facts that support the offense charged. For instance, it details numerous interactions Jean had with the victim around the time of the murder. It recites the testimony of a witness, Mr. Farhan, a friend of the victim, who picked up Jean and the victim and drove them to and from a party on the night of the incident. It contains statements from another witness, the victim's neighbor, to the affect that Jean came to his residence to borrow a hammer on or about the day the victim died. It also details how a third witness, Ms. Alourdes, the suspect's cousin, stated that Jean came to her home the morning of the alleged murder and said he feared being arrested. In addition, the statement details the Homicide Unit's investigation of the crime scene and how that investigation uncovered a purse containing Jean's personal papers and a blood stained bracelet similar to one Jean was wearing in a photograph. There is also the fact that Defendant apparently fled Canada shortly after the murder and used an alias in this country for nearly seventeen years. The Court could go on with additional facts and information in the statement, but it is enough to say it is comprehensive.

Jean has not submitted any evidence in opposition to the Government's proof.[10] Jean, however, does attempt to raise several questions about the reliability of the Government's evidence. For example, he argues probable cause is lacking because the witnesses' testimony is hearsay and years old and there is no (at least disclosed) forensic evidence. Other arguments include that the Canadian police's investigatory techniques were flawed, and that the Government has established nothing other than that perhaps he may have visited the victim or the victim's home on some occasion prior to or after her death.[11]

Probable cause is a relatively low standard requiring only "[a] reasonable ground for belief in certain alleged facts." BLACK'S LAW DICTIONARY 1201 (6th ed. 1990). Moreover, this Court's function is only to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient

---

[10] Defendant would be permitted to introduce only explanatory evidence -- but he has not offered any. See Hoxha, 465 F.3d at 561 (The range of evidence that a defendant may introduce as to probable cause at an extradition hearing is limited. Courts have traditionally distinguished between inadmissible "contradictory evidence," which merely conflicts with the government's evidence, and admissible 'explanatory evidence,' which entirely eliminates probable cause. In practice, this line is not easily drawn, but the rule serves the useful purpose of allowing the defendant 'to present reasonably clear cut proof ... of a limited scope [that has] some reasonable chance of negating a showing of probable cause,' while preventing the extradition proceedings from becoming a dress rehearsal for trial.").

[11] Defendant also challenges the reliability of the Government's proofs by criticizing Detective Paradiso's summary of facts as insufficient and unsworn. However, hearsay statements of witnesses summarized in the affidavit of a foreign official may be sufficient to support a finding of probable cause in an extradition proceeding. See, e.g., Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980); Afansajev v. Hurlburt, 418 F.3d 1159, 1162 (11th Cir. 2005); Bovio v. United States, 989 F.2d 255, 259-61 (7th Cir. 1993); In re Extradition of Skaftouros, 643 F. Supp. 2d 535, 548 (S.D.N.Y. 2009); In re Ryan, 360 F. Supp. 270, 273 (E.D.N.Y. 1973).

to justify a conviction. See generally Collins, 259 U.S. at 316.[12] With that limited function in mind, Defendant's contentions are insufficient to raise any serious doubts about the reliability of the Government's evidence. Detective Paradiso's summary of the evidence is a comprehensive recitation of allegations, corroborated by statements of multiple witnesses, which provides ample information to support a reasonable belief that the defendant committed the offense at issue. Moreover, while much of the evidence is circumstantial, it is noteworthy that Canada is not required to present its entire case in this country, nor is it appropriate for this Court to assess whether the evidence presented is sufficient to justify a conviction. See Austin v. Healey, 5 F.3d 589, 605 (2d Cir. 1993) ("No doubt, the evidence tying Austin to the shooting of Wilson is circumstantial, and less than overwhelming. However, the foreign government is not required to present its entire case in this country. The evidence presented need only 'support a reasonable belief that [Austin] was guilty of the crime[s] charged.'"), cert. denied, 510 U.S. 1165 (1994). The Government's proofs satisfy the probable cause standard. See Bovio v. United States, 989 F.2d 255, 259-61 (7th Cir. 1993) (probable cause finding based on summary of allegations from requesting government).

Based on the totality of the circumstances presented here, and the Court's limited role in the context of this proceeding, the Court finds that the Government has established probable cause to sustain the charge.

---

[12] ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence

## CONCLUSION

For the reasons set forth above, the Government's request for the extradition of Dieuseul Jean to Canada is **GRANTED**. This ruling will be certified to the Secretary of State, together with a copy of all evidence received in this proceeding.

s/Mark Falk<br>
**MARK FALK**<br>
**United States Magistrate Judge**

**Dated: August 22, 2013**

---

is sufficient to justify a conviction.").